IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 JUL -7 PM 3: 48

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| RICKY D. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2155 Ml/An |
| | ) | |
| CITY OF MEMPHIS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Renewed Motion for Summary Judgment of Defendant City of Memphis, filed April 20, 2005.[1] Plaintiff responded in opposition on May 20, 2005. For the following reasons, Defendant's motion is DENIED.

The instant case arises from Plaintiff Ricky Adams's application for and rejection from a probationary position as a

---

[1] Defendant originally moved for summary judgment on March 5, 2004, to which Plaintiff responded in opposition on April 26, 2004. On January 31, 2005, Defendant filed a Supplemental Memorandum of Facts and Law in Support of Defendant City of Memphis' Motion for Summary Judgment. On February 25, 2005, Plaintiff filed a supplemental response to Defendant's motion for summary judgment. On March 11, 2005, the Court denied Defendant's original motion for summary judgment, without prejudice, pursuant to the Soldiers and Sailors Relief Act, 50 App. U.S.C. § 521, because Plaintiff was then serving a tour of active duty with the United States Navy in Iraq. (Order Denying Defendant's Motion for Summary Judgment Without Prejudice, March 11, 2005 (Docket No. 93).) Upon Plaintiff's return from active duty, Defendant renewed its motion in accordance with the Court's March 11, 2005, order. The Court has considered the parties' arguments in all of the above-mentioned submissions.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 7-8-05

111

firefighter/paramedic with the Memphis Fire Training Academy. Plaintiff contends that Defendant City of Memphis discriminated against him in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") because Defendant regarded him as disabled due to a color vision deficiency and therefore failed to hire him.

## I. BACKGROUND AND RELEVANT FACTS

In July of 1999, Plaintiff applied for a probationary position as a firefighter/paramedic with the Memphis Fire Training Academy. Plaintiff was offered a position in the April, 2001, training class, contingent upon his passing certain medical screening tests. Those medical screening tests included a color vision test. It is undisputed that Plaintiff failed the color vision test, although he passed other vision tests.[2]

According to Defendant, if an applicant does not pass the color vision test, the applicant is required to see a specialist

---

[2] Plaintiff admits that he has a genetic color vision deficiency, however, he contends that it has not disabled him from driving an ambulance safely at high speed, working as a paramedic, passing a hazardous materials recognition course, passing a firefighter training course and earning a firefighter certification from the State of Missouri. (Pl.'s May 20, 2005, Supp'l Resp. to Def.'s Mot. for Summ. J. at 11.) Plaintiff also contends that his color vision defect does not preclude him from performing the essential job tasks of a firefighter, and that a national standard of medical requirements for firefighters does not list color vision deficiency as a condition that prevents a person from performing fire-fighting operations.

to determine the type of color vision deficiency involved.[3] The applicant must then return to the medical screening process with a diagnosis before further testing can be completed. If the color vision deficiency can be corrected with proper lenses, then the applicant is allowed to progress in the selection process. However, no applicant is allowed to progress if he or she fails the color vision test and does not follow the aforementioned procedure. Plaintiff's failure to complete the medical examination therefore made him ineligible to progress in the selection process.

Subsequent to his medical examination, Plaintiff was sent a letter dated June 5, 2001, that indicates, in relevant part:

> The purpose of this correspondence is to confirm the reason that you did not progress in the selection process for Fire Recruit/Paramedic Firefighter-Probationary with the City of Memphis.
>
> As you are aware, the results of you [sic] pre-employment medical examination indicated that you <u>failed the color vision test</u>.
>
> If your medical condition is treatable/correctable, and you have sought medical attention for this condition, please provide documentation from your physician as to the outcome or prognosis.

(Attached as unnumbered exhibit to Def.'s January 31, 2005, Supp'l Mem. of Facts and Law in Supp. of Def. City of Memphis'

---

[3] Plaintiff contends that this procedure was gratuitous, in his case, because the fact that he passed a general visual acuity test would establish the type of color vision deficiency that he had - which is a minor type that he contends would not prevent him from doing the job for which he applied.

[sic] Mot. for Summ. J.)  It is undisputed that Plaintiff did not attempt to return to the medical screening process with glasses or contact lenses to be reassessed, that Plaintiff did not seek a second opinion regarding his color vision deficiency, and that Plaintiff did not obtain corrective lenses for his color vision deficiency.  However, Plaintiff contends that his color vision deficiency is neither treatable nor correctable.

Plaintiff also contends that candidates who pass the medical examination are notified immediately by telephone and scheduled to attend a training class. (Pl.'s Supp'l Appx. Subm. in Supp. of Pl.'s Supp'l Resp. to Def.'s Mot. for Summ. J., Ex. 6 (Dep. of Gwen Willingham) at 51.)  However, candidates who fail the medical examination are informed by mail only after candidates who pass the medical exam are notified and hired, in some cases after the training class has already started. (Id., Ex. 6 at 50-52.)  Plaintiff contends that he received the June 5, 2001, letter after the Memphis Firefighter Academy class for which he was slated to attend had started. (Id., Ex. 7 (Dep. of Ricky Adams) at 66.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to

-4-

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the

-5-

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

### III. ANALYSIS

Defendant moves for summary judgment regarding Plaintiff's claim of discrimination under the ADA. A plaintiff may support a claim of discrimination under the ADA with either direct or circumstantial evidence of discrimination. Where a plaintiff points to circumstantial evidence of discrimination, his claim is analyzed under the framework for deciding discrimination cases set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Kocsis v. Multi-Care Mgt., 97 F.3d 876, 882-83 (6th Cir. 1996) (citations omitted).

Under that framework, a plaintiff must first establish a *prima facie* case of disability discrimination by proving that: (1) he was "disabled" within the meaning of the Act; (2) he was qualified for the position; (3) he suffered an adverse employment decision with regard to the position in question; and (4) a non-disabled person replaced him or was selected for the position that the disabled person had sought. Kocsis, 97 F.3d at 882-83 (citations omitted). In order to prove that he is disabled under the ADA, a plaintiff must show that he (1) has a physical or mental impairment that substantially limits one of more of his major life activities; or (2) that he has a record of such an

impairment; or (3) that he is regarded as having such an impairment. See 42 U.S.C. § 12102(2).

If the plaintiff establishes the elements for a *prima facie* case, the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. Kocsis, 97 F.3d at 882-83 (citation omitted). If the defendant carries that burden of production, then the plaintiff must then prove that the defendant's proffered reasons were not its true reasons, but were merely a pretext for illegal discrimination. Id. (citation omitted).

In order to show that the Defendant's reasons were pretextual, a plaintiff must prove: (1) that the proffered reasons had no basis in fact; or (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action. Id. (citations omitted). At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that illegal discrimination took place. Id. (citation omitted).

Alternatively, a plaintiff may establish a *prima facie* case of discrimination by presenting "direct evidence of discriminatory intent." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)(citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)). "In direct evidence cases, once a plaintiff

shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have [taken the adverse employment action] even if it had not been motivated by impermissible discrimination." Id. (citations omitted).

### A. *Prima Facie* Case

Plaintiff contends that Defendant regarded him as disabled. Persons who have impairments that are not substantially limiting, but who are regarded by their employer as being substantially limited, are considered "disabled" for the purposes of the ADA. Kocsis, 97 F.3d at 884. "That definition of disability is designed to protect against erroneous stereotypes some employers hold regarding certain physical or mental impairments that are not substantially limiting in fact." Id. at 885 (citation and internal quotation marks omitted).

To establish a *prima facie* case that he was regarded as disabled under either the McDonnell Douglas burden shifting scheme or the direct evidence scheme, Plaintiff must show that Defendant treated him as having an impairment that substantially limits one or more of his major life activities, that he is otherwise qualified for the position for which he applied,[4] and

---

[4] The parties do not dispute whether Plaintiff was otherwise qualified for the position for which he applied.

-8-

that he was denied employment because Defendant regarded him as disabled. <u>Sullivan v. River Valley School Dist.</u>, 197 F.3d 804, 810 (6th Cir. 1999).[5]

Defendant chiefly contends that Plaintiff was not hired because he did not follow proper procedures after having failed the color vision test, and therefore that Plaintiff cannot prove that he was denied employment because Defendant regarded him as disabled.  However, Plaintiff points to evidence in the record to show that compliance with Defendant's requirements would have been futile.  Specifically, Plaintiff points to evidence that he received notice that he had failed the color vision test after the April, 2001, training class had already been selected, that Defendant's general policy is to notify those who fail such a test after all of those who passed the test have been notified that they passed and seated for the training class, and that his color vision impairment is neither treatable nor correctable.  If those assertions are proven to be true, then Plaintiff's compliance with Defendant's requirements would have been futile.  Accordingly, a genuine issue of material fact exists regarding whether Plaintiff was denied employment because Defendant regarded him as disabled.

---

[5] Plaintiff contends that Defendant's June 5, 2001, letter is direct evidence of discriminatory intent.  Defendant's intent would only be discriminatory, however, if Plaintiff is able to prove that Defendant regarded him as disabled under the ADA.

-9-

The parties also dispute whether Defendant treated Plaintiff as having an impairment that substantially limits one or more of his major life activities. There are two ways by which individuals may be regarded by a covered entity as being disabled for purposes of the ADA: a mistaken belief that a person has a physical impairment that substantially limits one or more major life activities, or a mistaken belief that an actual, nonlimiting impairment substantially limits one or more major life activities. Cotter v. Ajilon Servs., 287 F.3d 593, 599 (6th Cir. 2002)(citing Sutton v. United Air Lines, 527 U.S. 471, 489 (1999)); Equal Employment Opportunity Comm'n v. Northwest Airlines, Inc., 246 F.Supp.2d 916, 924 (W.D. Tenn. 2002).

A plaintiff must show that any perceived impairment is regarded by the employer as a substantial limitation on a major life activity. Kocsis, 97 F.3d at 885 (citations omitted).[6] Plaintiff contends that Defendant regarded him as substantially limited in the major life activities of seeing and driving. (Pl.'s April 26, 2004, Resp. to Def.'s Mot. for Summ. J. at 14.)

---

[6] Regarding major life activities other than working, an individual is "substantially limited" when he is:
> (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Kocsis, 97 F.3d at 885 (citing 29 C.F.R. § 1630.2(j)(1)).

Seeing is a major life activity. See Black v. Roadway Express, 297 F.3d 445, 449 (6th Cir. 2002)(citing 29 C.F.R. § 1630.2(i)).[7] Having reviewed the record and the parties' submissions, the Court finds that Plaintiff has pointed to sufficient evidence in the record to create genuine issues of material fact regarding whether Defendant perceived Plaintiff as substantially limited in the major life activity of seeing. Accordingly, genuine issues of material fact exist regarding whether Plaintiff has established a *prima facie* case of disability discrimination.

### B. Legitimate Nondiscriminatory Reason

Defendant has articulated a legitimate nondiscriminatory reason for failing to hire Plaintiff - namely, that Plaintiff did not to follow proper procedures after having failed the color vision test. However, as the Court has noted, Plaintiff has pointed to evidence in the record to show that following those procedures would have been futile. That same evidence, if proven true, would support Plaintiff's contention that Defendant's reasons were pretext for discrimination. Accordingly, genuine issues of material fact exist regarding whether Defendant had a

---

[7] Although the inability to drive might result from a substantial limitation on other life activities, driving in and of itself is not a major life activity. See Felix v. New York City Transit Auth., 324 F.3d 102, 106 (2nd Cir. 2003)(finding driving is not considered a major life activity).

legitimate nondiscriminatory reason for not hiring Plaintiff, and whether that reason was pretext for discrimination.

### IV. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is DENIED.

So ORDERED this __7__ day of July, 2005.

```
                              /s/ Jon P. McCalla
                              _____
                              JON P. McCALLA
                              UNITED STATES DISTRICT JUDGE
```

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 111 in case 2:03-CV-02155 was distributed by fax, mail, or direct printing on July 8, 2005 to the parties listed.

---

Donald A. Donati
DONATI LAW FIRM, LLP
1545 Union Ave.
Memphis, TN 38104

Chandell W. Ryan
CITY ATTORNEY'S OFFICE
125 N. Main Street
Ste. 314
Memphis, TN 38103

Reva M. Kriegel
LAW OFFICE OF REVA M. KRIEGEL
266 S. Front St.
Ste. 206
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT